UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEBRA KNIGHT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2471** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION "C" (3)** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Debra Knight filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA").  The matter has been fully briefed on cross-motions for summary judgment and is ripe for review.  For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

I.     BACKGROUND

Plaintiff filed an application for a period of disability and DIB on November 28, 2011, alleging a disability onset date of November 22, 2001. (Adm. Rec. at 11).  Plaintiff alleged disability due to a heart attack.  (*Id.* at 177).  Plaintiff, born on June 28, 1960, was 41 years old on the date on which she alleged disability and 52 years old at the time of the final administrative decision.  (*Id.* at 173).  Plaintiff has an eleventh-grade education.  (*Id.* at 177).  Plaintiff has past work experience in child care.  (*Id.* at 178).

Defendant initially denied plaintiff's application on May 3, 2012 and on reconsideration on

the same date. (*Id.* at 11). Plaintiff sought an administrative hearing, which defendant held on April 22, 2013. (*Id.* at 23-48). Plaintiff and a vocational expert ("VE"), Wendy P. Klamm, testified at the hearing.

On June 21, 2013, the administrative law judge ("ALJ") issued a decision in which she found that plaintiff had not been disabled through the date of the decision. (*Id.* at 11-18). In the decision, the ALJ concluded that plaintiff has the severe impairments of coronary artery disease (status post stenting), chronic obstructive pulmonary disease. hypertension, and lumbago. (*Id.* at 14). The ALJ held that plaintiff does not have an impairment that meets or medically equals a listed impairment under the regulations. (*Id.*). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work activity as defined in 20 C.F.R. § 404.1567(b) with additional constraints. (*Id.*). The ALJ found that plaintiff can stand and/or walk six hours in and eight-hour workday; she can sit six hours in an eight-hour workday; she can lift and/or carry 10 pounds frequently and 20 pounds occasionally; she can never climb ropes, ladders, or scaffolding; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to fumes, odors, and dusts; and she can not perform work requiring her hands to come into contact with chemicals. (*Id.* at 14-15). The ALJ concluded that plaintiff can not perform her past relevant work as a babysitter. (*Id.* at 17). The ALJ determined that plaintiff can perform jobs that exist in significant numbers in the national economy, such as a small products assembler, a price marker, and a cafeteria attendant. (*Id.* at 17-18). The ALJ thus denied plaintiff DIB. (*Id.* at 18).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she is not disabled.

(*Id.* at 5-7). On September 11, 2014, the Appeals Council denied plaintiff's request. (*Id.* at 1-3). Plaintiff then timely filed this civil action.

## II.    STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts

in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

**III.    ENTITLEMENT TO BENEFITS UNDER THE ACT**

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if her physical or mental impairment is so severe that she is unable to do not only her previous work, but can not, considering her age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists, or whether she would be hired if she applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38

F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)).  If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy.  *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995).  Step V also requires the Commissioner to use the medical-vocational guidelines to make her disability determination.  *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial

are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## IV. ISSUE ON APPEAL

There is one issue on appeal:

(1) Whether substantial evidence supports the ALJ's conclusion that plaintiff is not disabled within the meaning of the SSA and whether the ALJ applied the proper legal standards.[1]

## V. ANALYSIS

**1. Whether substantial evidence supports the ALJ's conclusion that plaintiff is not disabled within the meaning of the SSA and whether the ALJ applied the proper legal standards.**

Plaintiff contends that the ALJ paid "lip service" to *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), when she assessed plaintiff's severe impairments. Reviewing the opinion, the Court finds that this argument is without merit. As noted above, the ALJ determined at step two that, based on the *Stone* severity standard, plaintiff has the following severe impairments: coronary artery disease (status post stenting), chronic obstructive pulmonary disease, hypertension, and lumbago. (Adm. Rec. at 14). Plaintiff has pointed the Court to no other impairments that the ALJ should have included, nor has she explained exactly how the ALJ erred. Indeed, the ALJ ultimately concluded that plaintiff has more severe impairments than she herself thought. As noted above, plaintiff

---

[1] Plaintiff asserts two issues. However, given that the two issues are inextricably intertwined, the Court combines them.

applied for disability due only to a heart attack. Thus, there was no error here, and the Court rejects this argument.

Plaintiff's next argument is rather unclear, and, because she is proceeding *pro se*, the Court will liberally construe it. Plaintiff appears to argue that her impairments meet or equal the requirements of a listed impairment in Appendix 1, Subpart P, Regulations No. 4. The ALJ considered plaintiff's coronary disease and hypertension under Listing 4.04 (ischemic heart disease), her chronic obstructive pulmonary disease under Listing 3.02 (chronic pulmonary insufficiency), and her lumbago under Listing 1.04 (disorders of the spine). (Adm. Rec. at 14). The ALJ concluded that the medical evidence did not support a finding that any impairment was of listing-level severity, and no medical source had mentioned findings that were equal in severity to the criteria in the Listings. (*Id.*). Moreover, the ALJ relied on the opinions of the state-agency reviewing physicians, who also concluded that plaintiff's impairments did not meet or equal any listed impairment. (*Id.* at 14, 60-66, 308-16); *see also* 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."). Plaintiff must provide the Court with findings that support each of the criteria for any Listing that she allegedly meets. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). Plaintiff does not meet this burden of proof.

This argument may also be construed as a challenge to the ALJ's assessment of plaintiff's limitations and restrictions that result from her impairments. The determination of a plaintiff's RFC is an administrative assessment, based on the totality of the evidence, of the extent to which

7

plaintiff's impairments and related symptoms affect her capacity to perform work-related activities. 20 C.F.R. § 404.1545 (noting that a plaintiff's RFC is based on all relevant evidence); Social Security Ruling ("SSR") 96-5p; SSR 96-8p. Determining an individual's RFC is the sole responsibility of the ALJ, as the ALJ is charged with the interpretation of the medical evidence to determine an individual's capacity to work. 20 C.F.R. §§ 404.1545, 404.1546; *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); SSR 96-5p; SSR 96-8p.  Moreover, "[t]he mere presence of some impairment is not disabling per se.  Plaintiff must show that she was so functionally impaired by her [impairments] that she was precluded from engaging in *any* substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (emphasis added).

      The ALJ considered the medical evidence, as well as plaintiff's testimony at the oral hearing, and determined that plaintiff has an RFC for a restricted range of light work. (Adm. Rec. at 14-17, 240-69, 280-92, 297-307, 317-43, 346-59); *Hollis v. Bowen*, 837 F.2d 1378, 1386-1387 (5th Cir. 1988) (finding that the ALJ properly considers the descriptions of physicians, the applicant, or others, and credibility). The ALJ noted that plaintiff had a myocardial infarction and underwent angioplasty and the placement of stents, but she was discharged home in good condition. (Adm. Rec. at 16, 240-69). The ALJ also recognized that an echocardiogram showed good left ventricular function and that plaintiff had average exercise tolerance for her age with no clinical evidence of ischemia. (*Id.* at 16, 240-69). In addition, the ALJ considered the evidence of plaintiff's chronic obstructive pulmonary disease, including radiological evidence of only mild emphysematous changes and only small airway disease. (*Id.* at 16, 280-92, 297-307, 317-43, 346-59). The ALJ also noted that treatment notes showed that plaintiff was "largely asymptomatic." (*Id.* at 16, 280-92,

297-307, 317-43, 346-59). The ALJ further noted that none of plaintiff's doctors had indicated that plaintiff was disabled. (*Id.* at 17). An ALJ's determination of non-disability is supported when no physician of record states that the claimant is disabled. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995). Lastly, the ALJ assessed plaintiff's credibility and discounted her complaints based on her daily activities, the objective medical evidence, and her inconsistent statements with regard to her income earned after her alleged onset date. (*Id.* at 16).

Plaintiff cites *Newton v. Apfel*, 209 F.3d 448, 455 n.3 (5th Cir. 2000), to argue that if she required medical treatment which significantly interrupted her ability to perform a normal work schedule, the ALJ had to decide if the frequency of such medical treatment would preclude her ability to perform work in a competitive environment. But *Newton* does not stand for such a proposition. *Newton* addresses the ability of an ALJ to rely on a non-examining, non-treating testifying physician's opinion over the opinion of a treating physician. *Newton*, 209 F.3d at 456-58. Moreover, the footnote to which plaintiff cites in her brief relates to the ALJ's consideration of a claimant's part-time work activity after onset, not medical treatment. *Newton*, 209 F.3d at 455 n.3. Here, the ALJ considered plaintiff's work activity after onset as part of her credibility analysis, but she did not rely on it as the sole factor to determine that plaintiff is capable of performing work activity during the relevant period. To the contrary, the ALJ relied heavily on the objective medical evidence to determine that plaintiff is capable of performing a range of light work with restrictions. (Adm. Rec. at 14-17). Further, plaintiff has not demonstrated that she required medical treatment so frequently that it impacted her ability to maintain a full-time job. She alleges that she sought treatment at the hospital or emergency room 17 times between December 1, 2011, and January 7,

2013, but most of these visits were short in nature and did not require overnight hospitalization. (*Id.* at 270-307, 317-43, 346-59). Thus, plaintiff had 17 treatment visits in a 13-month period, which averages to just over one visit per month. Plaintiff has not demonstrated how an average of a little over one visit per month negatively impacted her ability to maintain a full-time job. Accordingly, the Court rejects this argument.

As noted above, the Court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey*, 230 F.3d at 135. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas*, 503 U.S. at 112-13. Having reviewed the record and the Commissioner's findings, the Court finds that substantial evidence supports them.

### VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the

district court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

    New Orleans, Louisiana, this 23rd day of October, 2015.

                                    **DANIEL E. KNOWLES, III**
                                    **UNITED STATES MAGISTRATE JUDGE**